United States District Court
Southern District of Florida

**Alp Eke**

    Plaintiff,

vs.

**FirstBank Florida, Thompson Berges, P.A., Otto E. Berges, individually,**

    Defendants.

CASE No.10-23142-UNGARO/SIMONTON

## PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff Alp Eke ("Plaintiff") requests that this Court reconsider its March 11, 2011 Order on Motions to Dismiss ("Order") (D.E. 45) Plaintiff's First Amended Complaint (D.E. 18). The Court's Order dismissed with prejudice Counts I (FDCPA)[1] and II (FCCPA)[2] and declined to exercise supplemental jurisdiction over Count III (Abuse of Process). In support of this Motion for Reconsideration ("Motion") Plaintiff states as follows.

### I. INTRODUCTION

Plaintiff understands he faces a high bar in filing this Motion and does not make the submission lightly.

Plaintiff respectfully files this Motion because the Court has erred in applying the 15 U.S.C. § 1692(a)(6)(F)(iii) exemption—an exemption that only applies to the original creditor's assignee (Defendant FirstBank Florida)—to the law firm (Defendant Thompson Berges) and its attorney employee (Otto Berges).

---

[1] "FDCPA" is an abbreviation for the Fair Debt Collections Practices Act, 15 U.S.C § 1692 *et seq.*
[2] "FCCPA" is an abbreviation for the Florida Consumer Collections Practices Act, Fla. Stat. § 559.55 *et seq.*

Count I of the First Amended Complaint is not directed at FirstBank Florida but only at Thompson Berges and Otto Berges as debt collectors that FirstBank hired, among other things, to enforce its security interest in the rental debt. (*See* D.E. 18 at pp. 9-12.)

The definition of "debt collector" under § 1692(a)(6) expressly includes "any person . . . in any business the principal purpose of which is the enforcement of security interests." Plaintiff sufficiently alleged that Thompson Berges and Otto E. Berges were debt collectors under § 1692(a)(6) for purposes of § 1692(f)(6). (*See* D.E. 18 at ¶ 52(e).)

The Court has clearly determined, in its Order, that the rent was not in default at the time in which Mr. Berges made his demand for payment of the rent *and* at the time he threatened to change the locks on the door of Plaintiff's Apartment if payment was not forthcoming. (*See* Order, D.E. 45, at p. 2.) This finding without a doubt supports Plaintiff's allegation, in Paragraph 52(e) of the First Amended Complaint, that Defendants Thompson Berges and Otto Berges violated:

> 15 U.S.C. § 1692f(6) by threatening to take any non-judicial action (changing the locks on the Apartment) to effect Mr. Eke's dispossession from the Apartment when (A) the Bank possessed no present right to possess the Apartment; (B) the Bank possessed no present intention to possess the Apartment; or (C) the Apartment was exempt by the Protecting Tenants at Foreclosure Act from such dispossession

If the exclusion offered by § 1692(a)(6)(F)(iii) automatically excludes any person who under § 1692(f)(6) would be a debt collector because the debt was not in default when assignee obtained the debt, then § 1692(f)(6) would be eviscerated because virtually all enforceable secured rights under a security agreement do not ripen until there is an event of default. Under the FDCPA, the

immunity of the creditor (or its assignee) does not pass on to the person unlawfully threatening to enforce the security interest when there is no present right to do so.

The gravamen of Plaintiff's First Amended Complaint in this action is that the Defendants Thompson Berges and Otto Berges threatened to enforce their client's security interest even though they had **no present right** to change the locks on the Apartment's door and **no present right** to **threaten** to change locks on the Apartment's door until, at the very least, FirstBank obtained the underlying debt and a Certificate of Title (which was not obtained until October 2010) precisely because there was **no default**.

## II. Legal Standard

In this circuit a motion for reconsideration should only be granted if there is, (1) an intervening change in controlling law, (2) newly discovered evidence; or (3) the need to correct clear error or prevent manifest injustice. *Insured Deposits Conduit, LLC v. Index Powered Financial Serv.*, 2008 WL 5691352, * 1 (S.D. Fla. 2008).

Additionally, a motion for reconsideration should not "be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Id. citing Z.K. Marine, Inc., v. M/V Archigetis*, 808 F.Supp. 1561, 1563 (S.D.Fla.1992) (citations omitted).

The Eleventh Circuit has made it abundantly clear that "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion." *Id. quoting Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir.1997). A motion for reconsideration is not an opportunity "to rethink what the Court already thought through-rightly or wrongly." Z.K. Marine, Inc., 808 F.Supp. at 1563. The moving party "must set forth facts or

law of a strongly convincing nature to induce the court to reverse its prior decision." *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994).

### III. LEGAL ARGUMENT

**A.  Plaintiff Not Given Opportunity To Address Issue Whether Defendants Thompson Berges and Otto Berges Qualified as Debt Collectors**

Plaintiff is not attempting through this Motion to re-argue earlier arguments. As the Court noted, Defendants did, in their Motion to Dismiss, put forward as their first point that the debt was not in default. (*See* D.E. 23 at 6.) Defendants argued in the Motion to Dismiss that the Plaintiff could not obtain relief under the FDCPA because a debt not in default is not a "debt" as construed under 15 U.S.C. § 1692(a)(5).

In Plaintiff's defense, the issue as characterized by the Defendants appeared to take aim at the first element of an FDCPA action, that involving the debt, and not one involving the *debt collector*:

> If a tenant is not in default of his rent payments to a landlord, the tenant does not fall under the protections of the FDCPA because where there is no debt, there can be no debt collector. *Id.*

As the Court can see, the Defendants' focus was on the nature of the debt, not on the nature of the debt collector.

Plaintiff responded to this point by asserting that: "debt" as defined under both § 1692(a)(5) and the applicable law of the Eleventh Circuit includes rent for a residential dwelling. The applicable law makes no distinction between "rent" and "back rent". (*See* Resp. to Mot. to Dismiss, D.E. 34 at 6.)

### B.  The Court, Not Defendants, Put § 1692(a)(6)(F)(iii) Forward As A Defense

If Defendants, and not the Court, had put forward § 1692(a)(6)(F)(iii) as a defense, Plaintiff would certainly have pointed out that there is no evidence *when* FirstBank obtained the debt pursuant to § 1692(a)(6)(F)(iii).

By its plain terms, § 1692(a)(6)(F)(iii) only excludes a person from the definition of "debt collector" when the debt collection activity "concerns a debt which was not in default *at the time it was obtained by such person.*" There is no allegation in Plaintiff's First Amended Complaint as to *when* FirstBank Florida obtained the debt that would entitle it to the § 1692(a)(6)(F)(iii) exclusion.[3] Furthermore, the phrase "obtained by such person" arguably limits the exclusion to the person who *obtained* debt (the assignee) not those who are attempting to collect the debt on the assignee's behalf.

Plaintiff addressed this timing and ownership issue in the negative: by alleging that *when* FirstBank's agents (Thompson Berges) first attempted to enforce the debt and the security instrument, FirstBank had not yet obtained a Certificate of Title. (*See* D.E. 18 at ¶ 24.)

### C.  Plaintiff Properly Plead Pursuant to § 1692(f)(6)

Plaintiff is not requesting that this Court expend its valuable judicial resources on re-thinking an issue it has already thought through. As the Defendants did not move to dismiss because Plaintiff failed to meet the pleading requirements pursuant to § 1692(f)(6), this issue was not properly before this Court.

---

[3] Had Plaintiff been given the opportunity, Plaintiff would also have pointed out that the Federal Trade Commission Staff Commentary on the Fair Debt Collection Practices Act, Section 803(4)(f) states: "The exception (iii) for debts not in default when obtained applies to parties such as mortgage service companies whose business is servicing current accounts." The law firm of Thompson Berges is not such a company. For this reason, among others, Plaintiff contends that Defendants cannot avail themselves of the § 1692(a)(6)(F)(iii) exclusion.

In addition, the Court was not given the opportunity to think through the relationship between § 1692(a)(6)(F)(iii) and § 1692(f)(6). Primarily for this reason, Plaintiff believes it is clear error for this Court to have dismissed Counts I and II with Prejudice.

### i. Section 1692(a)(6) defines enforcers of security interests as debt collectors.

Defendants have contended in their Motion to Dismiss that they sent a Demand for Rents to Plaintiff on May 7, 2010. (D.E. 23 at 2.) Two months after Plaintiff filed its Response to Defendants' Motion to Dismiss, Plaintiff obtained through discovery a copy of the May 7, 2010 correspondence. Plaintiff attaches the May 7, 2010 letter from Thompson Berges addressed to Jose Luis Furoiani Zambraon as **Exhibit A**. The letter is not addressed to Plaintiff Alp Eke. Mr. Eke is only cc'd. *Id.*

Attached to the May 7, 2010 letter is a copy of the security instrument ("Assignment of Rent") that Defendants claim entitled them to collect rent and change the locks on the Apartment's door. Paragraph H provides:

> Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument; and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.

The parties dispute whether FirstBank provided the proper notice to Plaintiff thus triggering FirstBank's right to enforce the Assignment of Rents against the Plaintiff. Second, the exemptions provided under § 1692(a)(6)(F) do not become effective until the creditor "obtains" the debt. This is a mixed question of law and fact. One which, as the Plaintiff has alleged, requires the bank to have, at the very least, obtained the Certificate of Title, which did not happen until October 2010.

Defendants have not rebutted this contention. Until the debt is "obtained" there is no legal difference pursuant to the FDCPA between the initial creditor and a successive assignee

collecting the rental debt. In other words: prior to an effective assignment, the Defendants are engaged in debt collection on behalf of the original creditor for the benefit of the original creditor's bank (their client) and thus under the scope of the FDCPA.

Under these circumstances, it would be inequitable to exempt Defendants Thompson Berges and Otto E. Berges from complying with the FDCPA. As one court noted:

> Allowing debt collectors to send harassing letters to consumers before the debt has become due, only to cry "debt not in default" when the consumer seeks refuge in the FDCPA, would saw off the very branch on which the FDCPA sits.

*Healy v. Jzanus, Ltd.*, 2002 WL 31654571, *4 (E.D.N.Y. 2002) (the legislative intent behind the FDCPA is to protect the least sophisticated consumer).

Even so, the Assignment of Rents shows that Thompson Berges and Otto Berges functioned, at minimum, as § 1692(f)(6) debt collectors when they sought to enforce the Assignment of Rents against Plaintiff Alp Eke even though they had no present right to do so.

    ii.    **A § 1692(f)(6) cause of action exists when a default has not been established.**

Central to a § 1692(f)(6) cause of action is the issue whether the debtor had defaulted and thus given rise to an enforceable security interest. By its plain language, § 1692(f)(6) states as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

> (B) there is no present intention to take possession of the property; or
>
> (C) the property is exempt by law from such dispossession or disablement.

In addition, § 1692(a)(6) provides:

> For the purposes of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

In *Krajewski v. American Honda Finance Corp.* 557 F. Supp. 2d 596, 619 (E.D. Pa. 2008), the court held that a genuine issue of material fact existed as to whether the debt collector for finance company had the right to enforce the finance company's security interest when the plaintiff contended that there had been no default pursuant to the security agreement. *Id.* ("Whether AHFC-and by virtue of its relationship with AHFC, Richard & Associates-had a present right to possess the car depends on whether plaintiff had, in fact, defaulted under the Contract.") *see also Seibel v. Society Lease Inc.*, 969 F. Supp. 713, 717 (M.D. Fla. 1997) (Section 1692(f)(6) applies to debt collector if creditor did not have present right to effect dispossession or disablement of property; whether creditor had such a right is question of fact).

If there was no default, as this Court's Order held, then Plaintiff certainly has a more than plausible cause of action pursuant to § 1692(f)(6). As a matter of law it cannot be determined whether Defendants had the present right to possession (or to dispossession of Plaintiff), especially when the Defendants have not filed an Answer to the First Amended Complaint and discovery is still underway because of Defendants' recalcitrance.

In addition to the issue of whether the Defendants under Count I had a present right as defined in § 1692(f)(6)(A)-(B) is the issue of whether the Protecting Tenants in Foreclosure Act of 2009 rendered the property exempt under § 1692(f)(C). As noted above, Plaintiff properly pled these allegations in Paragraph 52(e) of the First Amended Complaint.

### IV. CONCLUSION

Plaintiff submits this Motion for Reconsideration because it would be inconsistent, on the facts pled, for the § 1692(a)(6)(F)(iii) exclusion to apply and yet the § 1692(f)(6) cause of action be dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. If there was no default then Defendants Thompson Berges and Otto Berges had no present right of action under § 1692(f)(6) to dispossess Mr. Eke of his residence or threaten to do so by changing the locks on the door. Plaintiff has adequately pled a cause of action pursuant to § 1692(f)(6) and respectfully requests that for the reasons explained above this Court grant this Motion and rule that Plaintiff has met the pleading requirements under § 1692(f)(6).

Respectfully Submitted,

/s/ Alexander Lian
Alexander Lian (Florida Bar Number: 571271)
Attorney e-mail address: alian@alexanderlian.com
LIAN & ASSOCIATES
701 Brickell Avenue, Suite 1650
Miami, Florida 33131
Telephone: (305) 381-7910
Facsimile: (305) 397-0999
*Attorneys for Plaintiff Alp Eke*

### CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2011 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner

specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Alexander Lian

## SERVICE LIST
**Alp Eke v. FirstBank Florida, et al**
**Case No. 10-CV-23142 Ungaro/Simonton**
**United States District Court, Southern District of Florida**

Michael Tomlin
mtomlin@dldlawyers.com
DeMahy Labrador Drake Payne & Cabeza
150 Alhambra Circle- Penthouse
Coral Gables, Florida 33134
Telephone: (305) 443-4850
Facsimile: (305) 443-5960
Attorneys for Defendants

# THOMPSON BERGÉS P.A.
### Mellon Financial Center

Cherish A. Thompson, Esq.  
cthompson@tbcounsel.com

Otto E. Bergés, Esq.  
oberges@tbcounsel.com

May 7, 2010

[First Class U.S. Mail Postage Prepaid]

Jose Luis Furoiani Zambrano  
1800 N. Bayshore Dr  
No. 2512  
Miami, FL 33132

RE: *ASSIGNMENT OF RENTS*

Dear Mr. Zambrano:

This law firm represents FirstBank Florida ("Bank"). This letter is a demand for the assignment of rents pursuant to §697.07, *Fla. Stat.* The demand herein pertains to certain agreements executed in favor of the Bank as the "Lender," on July 11, 2008, by you (hereby referred to as the "Borrower"). Said agreements include, but are not limited to:

1. that a certain mortgage including an adjustable rate rider, family rider (as an assignment of rents), condominium rider, and a second home rider recorded on July 18, 2008, in OR Book 426486, Pages 1011-1026 in the Public Records of Miami-Dade County, Florida, and mortgaged the real property located at 1800 N. Bayshore Drive, No. 2512, Miami, FL 33132, and more particularly described as:

   > Unit No. 2512, of 1800 Club, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 26060, Page 2296, of the Public Records of Miami-Dade County, Florida, as amended and/or supplemented from time to time, together with an undivided interest in the common elements thereto ("Real Property").

2. that certain promissory Note in the amount of $301,100.00 ("Note"); and
3. that certain assignment of rents incorporated into the Mortgage as a Family Rider also recorded in the Public Records of Miami-Dade County, Florida as referenced above ("Assignment");

As you are aware, you, as the Borrower, are in default of the obligations under the Agreements referenced above. As of May 11, 2010, the Borrower's total outstanding indebtedness under the Agreements is for $318,888.44, which represents $298,645.11 in principal, $20,243.33 in interest and default interest, and late charges accruing on the Note at $65.33 *per diem*.

Once the Borrower is in default, the Mortgage provides for the Bank to collect all rents, including security deposits on the Real Property ("Rents"), and directs the Borrower to turnover copies of any leases on the Real Property:

---

1111 Brickell Avenue, 11th Floor · Miami, Florida 33131  
tele: 305.913.8618 · fax: 305.402.2828 · www.TBCounsel.com

1


EXHIBIT Ex. A

[Borrower] will specifically assign to the [Bank] as additional security any and all such leases, including, without limitation, all rents, royalties, deposits, issues and profits of the [Real Property] from time to time accruing, the parties hereto acknowledging that this Mortgage constitutes a general assignment of any and all such leases. (See Mortgage, Family Rider A-I attached)

Fla. Stat. §697.07(3) provides:

Unless otherwise agreed to in writing by the [Bank] and [Borrower], the assignment of rents shall be enforceable upon the [Borrower's] default and written demand for the rents made by the [Bank] to the [Borrower], whereupon the [Borrower] shall turn over all rents in the possession or control of the [Borrower] at the time of the written demand or collected thereafter (the "collected rents") to the [Bank] less payment of any expenses authorized by the [Bank] in writing.

The Borrower assigned all Rents derived from the Real Property to the Bank as security for repayment of the Borrower's indebtedness under the Agreements. The Bank holds a lien on the Rents, which was perfected and effective against third parties upon recordation of its Agreements in the public records of Miami-Dade County. In accordance with §697.07(3), *Fla. Stat.*, Bank hereby invokes its right to enforce upon the Borrower's default, its demand for Rents and copies of any Leases on the Real Property. Bank hereby demands that the Borrowers turn over all existing and/or future Rents in its possession or control from this date onward. No deductions of any kind are authorized by Bank. The Rents, along with copies of all current Leases, should be directed to the following address:

> THOMPSON BERGÉS P.A.
> Mellon Financial Center
> 1111 Brickell Avenue, 11th Floor
> Miami, FL 33131

Be advised that receipt of any Rents from the Borrower will not cure its defaults under the Agreements regardless of any purported communication by the Borrower to the contrary. And, the Bank's application of such Rents does not waive any right or remedy of the Bank. Nothing herein is intended to be, or shall be, an election of remedies by the Bank. Bank expressly reserves all of its rights and remedies under the Agreements.

Please govern yourself accordingly,

*/s/ Otto Bergés*

Otto E. Bergés, Esq.

cc: Alp Eke

## 1-4 FAMILY RIDER
(Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 11th day of July, 2008, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to FirstBank Florida (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1800 North Bayshore Drive, #2512, Miami, FL 33132
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to,

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3170 1/01 *(page 1 of 2 pages)*
DoubleTimes

attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____(Seal)
Jose Luis Furoiani Zambrano -Borrower

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3170 1/01 *(page 2 of 2 pages)*
                                                                                          DoubleTime®